538 So.2d 1015 (1988)
Gerald B. PURVIS, Shereen S. Purvis, Joe F. Slade, Jr., and Brenda K. Slade
v.
AMERICAN MOTORS CORPORATION, Jeep Corporation, Tangipahoa Parish Police Jury, Thomas Brunet, Debbie Brunet and Sentry Insurance A Mutual Company.
No. CA 88 0273.
Court of Appeal of Louisiana, First Circuit.
December 20, 1988.
Rehearing Granted and Opinion Amended February 22, 1989.
Writ Denied April 21, 1989.
*1016 David Robinson, Baton Rouge, and Joseph H. Simpson, Amite, for plaintiff-appellant-third Gerald Purvis and Joe Slade.
C.G. Norwood, New Orleans, and Burgain G. Hayes, Austin, Tex., for defendant-appellant-second American Motors & Jeep Corp.
Henry Terhoeve, Baton Rouge, for defendant M/M Thomas Brunett and Sentry Ins.
Clifton Speed, Amite, for defendant-appellant-first, Tangipahoa Parish Police Counsel.
Before WATKINS, CRAIN and ALFORD, JJ.
CRAIN, Judge.
This is an appeal of a damage award in an action resulting from an automobile accident.
FACTS
Gerald and Shereen S. Purvis, Joe and Brenda K. Slade, Thomas and Debbie Brunet and a few other friends attended an outdoor music festival at Tangipahoa Beach and returned to the Brunet's house for a barbeque. Thomas Brunet and others went to the grocery for supplies. Shortly after they left, Debbie Brunet, Shereen Purvis, Brenda Slade, Terri Brewer Sprayberry and Howard Thomas decided to go to the store as well. They all got into a 1972 Jeep CJ-5 (Jeep) owned by the Brunets, with Debbie driving. In order to avoid striking a pothole, or after striking a pothole, Debbie Brunet steered the Jeep to her left into the path of an oncoming vehicle. She then steered it to the right and drove *1017 the Jeep into the ditch. She regained control of the Jeep and proceeded down the ditchline for some distance. When she turned left and attempted to return to the paved road the Jeep flipped on its side. Brenda Slade and Shereen Purvis were injured in the accident. The plaintiffs filed this action against American Motors-Jeep (AMC), Tangipahoa Parish Police Jury, Thomas and Debbie Brunet, and their liability insurer, Sentry Insurance Company (Sentry). A jury trial was held as to the action against AMC, the Brunets and Sentry. The trial judge heard the action against the parish.
A verdict was returned in favor of the plaintiffs finding fault on the parties in the following percent: Debbie Brunet, 70%, Thomas Brunet 0%, Tangipahoa Parish, 15%, American Motors-Jeep, 15%.
The jury further set damages as follows: Shereen Purvis, $95,000, Gerald Purvis $1,250, Brenda Slade $111,000, Joe Slade, $1,250.
The trial court ordered the liability of Sentry limited to $28,250, the limits of the insurance policy with interest. The trial court awarded an additur to Shereen Purvis in the amount of $50,000 because of inadequate compensation for the loss of two fingers on her right hand, increasing the judgment in favor of her to $145,000.
AMC appeals and assigns as error the decision of the trial court to admit Mr. John Noettl as an expert witness; the failure to prove a design defect in the Jeep CJ-5; the failure to show a causal connection between this accident and any purported failure to warn by AMC-Jeep; error on the part of the trial court in directing a verdict on the issue of the plaintiff's fault; error on the part of the trial court in instructing the jury that damages would be set according to the percentage of fault assigned, and failing to instruct the jury that the plaintiff could collect the entire judgment from one defendant; and error in the factual findings of the trial court.
Tangipahoa Parish appeals and assigns as error the factual finding that the potholes were a cause of the accident.
The plaintiffs assign as error the limiting of liability of Sentry Insurance Company alleging that the deposit of funds by Sentry was improperly tendered and that the policy provided that Sentry would be liable for interest on the full amount of the judgment.
Thomas and Debbie Brunet did not appeal nor answer the appeal of the trial court judgment.
The assignments of error present the following issues: the sufficiency of the evidence to support the judgment against AMC and Tangipahoa Parish Police Jury; whether the trial court erred in failing to instruct the jury that, if a judgment was awarded, the plaintiff could collect the full amount of the award from any defendant found solidarily liable; whether the trial court erred in directing a verdict in favor of the plaintiffs on the issue of their comparative fault; whether the deposit of funds by Sentry was properly tendered, and the sufficiency of the award to Gerald Purvis and Joe Slade, Jr. for loss of consortium.

SUFFICIENCY OF THE EVIDENCE

a) Acceptance of John Noettl as an Expert

AMC argues that the evidence against it is insufficient because the trial court erred in admitting Mr. Noettl as an expert in the field of the dynamics of Jeep CJ-5 rollovers.
Whether a witness meets the qualifications to testify as an expert witness and the competency of the expert witness to testify in specialized areas is within the discretion of the trial court. The exercise of that discretion will not be disturbed by an appellate court unless it is clearly erroneous. Anthony v. Hospital Service District No. 1, 477 So.2d 1180 (La.App. 1st Cir.1985), writ denied, 480 So.2d 743 (La. 1986).
We find no abuse of discretion by the trial court in admitting Noettl as an expert witness or in allowing him to testify in his field of expertise. Noettl has investigated over five hundred cases involving *1018 instances of Jeep rollover. He has a bachelor and master's degree in engineering and had conducted extensive testing involving Jeep CJ-5 rollover characteristics as well as other diagnostic testing of automobiles.

b) Sufficiency of the Evidence To Show a Design Defect

AMC first argues that modifications to the vehicle altered it so much that it was no longer a "Jeep CJ-5". Consequently, it is argued, the original design of the Jeep CJ-5 is not pertinent to a resolution of this case.
The engine, transmission, and steering wheel had been changed on the vehicle. Coil springs had been added to the suspension to provide extra "stiffness" and the tires were larger than those originally provided with the Jeep. Despite the evidence of changes, the jury found AMC at fault, thus rejecting the contention that the modifications altered the vehicle to an extent that AMC was relieved of responsibility for its design. Findings of fact by the jury will not be disturbed on review absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Noettl testified that the modifications to the suspension did not drastically affect the jeep's handling, and if anything, the modifications increased its resistance to rollover. He found that the engine, transmission and steering wheel had no effect on the accident. In addition, AMC stated, in a 1982 owner's supplement that was intended to be provided to all CJ-5 owners, that the vehicle could be used in off road racing by modifying the engine and suspension and changing the tires. AMC argues that the vehicle "tripped" over dirt "scooted up" by the right rear tire as it slid along the ditchline at the point of attempting reentry on the highway. This theory was provided by experts, but AMC failed to produce any physical evidence to support it, even though there were witnesses other than the parties involved present at the accident scene and photographs were taken. We find no manifest error in the determination of the jury that the modification to the jeep did not relieve AMC of responsibility for its design.
AMC next argues that it was error to admit into evidence a film of Jeep rollovers produced by Dynamic Science, Inc. In Hebert v. Brazzel, 403 So.2d 1242 (La. 1981) the trial court admitted experimental evidence even though the experiment differed in many ways from the conditions surrounding the accident. The Louisiana Supreme Court affirmed this decision citing McCormick on Evidence for the proposition that the similarity formula is a relative requirement and that the court might still conclude that the results of the experiment are of substantial enlightening value to the jury.
The tests were conducted at Dynamic Science's research center under the direction of Noettl. The tests were to determine the rollover characteristics of a 1980 Jeep CJ-5 under sharp turning maneuvers with optimum road conditions. Mr. Noettl testified that the test attempted to remove human error, braking, steering, tripping mechanisms and road conditions in testing the rollover characteristics of the CJ-5 produced only by lateral forces. Although the film might have been more objective and less dramatic had the testing "dummies" been removed, the test showed the tendencies of the vehicles to rollover in low speed situations which an automobile with a lower center of gravity would not have. Mr. Noettl testified that the 1972 CJ-5 and the 1980 CJ-5 test vehicle were virtually identical in handling characteristics. The tests were of situations which the average driver might encounter. After reviewing the film and the background information relating to the testing, we find no error on the part of the trial court in admitting the film into evidence.
In Halphen v. Johns-Manville Sales Corp., 484 So.2d 110, 115 (La.1986) the Louisiana Supreme Court stated:
A product may be unreasonably dangerous because of its design for any one of three reasons: (1) A reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs *1019 the utility of the product....(2) Although balancing under the risk-utility test leads to the conclusion that the product is not unreasonably dangerous per se, alternative products were available to serve the same needs or desires with less risk of harm; or (3) Although the utility of the product outweighs its danger-in-fact, there was a feasible way to design the product with less harmful consequences.
There was evidence from which the jury could have concluded that before the accident some of AMC's executive design personnel considered the CJ-5 to be unsafe because of its propensity to rollover due to its high center of gravity. They suggested lowering the ground clearance and widening the track width to lower its center of gravity and increase its stability.
After reviewing the record, we find the jury was not clearly wrong in its consideration of evidence to support finding AMC liable in part for the accident. Consequently, we find no manifest error on the part of the trier of fact.

LIABILITY OF TANGIPAHOA PARISH
The Parish appeals the judgment of the trial court which found it to be at fault in the accident.
Testimony and photographs were presented of the potholes and poor road conditions at the time of the accident. The testimony of the occupants of the vehicle was corroborated by the testimony of witnesses to the accident and those who arrived after the accident occurred. Although we might not have reached the same result as the trial court, there was sufficient evidence present in the record to support the decision. We find no manifest error.

FAILURE TO WARN BY AMC
AMC argues that the plaintiffs failed to show a causal connection between the accident and any purported failure to warn by AMC. Having found the jury would not be manifestly erroneous in finding a design defect, we need not consider this argument. However, we note that AMC had knowledge of the propensity of the CJ-5 to rollover and had failed to warn its customers at the time of this accident.

DIRECTED VERDICT
At the close of the case the trial judge granted a directed verdict in favor of the plaintiffs on the issue of comparative fault on their part.
A trial judge has much discretion in determining whether or not to grant a motion for a directed verdict. A motion for directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. Lincecum v. Missouri Pacific Railroad Company, 452 So.2d 1182 (La.App. 1st Cir.), writ denied, 458 So.2d 476 (La.1984).
The evidence showed that the entire group had consumed some beer earlier in the day at Tangipahoa Beach. There was no evidence of intoxication of the driver or any other person or that alcohol had contributed to the accident or the actions of any party. The appellant argues that the "entire outing ... was tainted with a kind of carefree or careless attitude" and that the plaintiffs might be found at fault for riding in the back of the Jeep. However, there is no support for this contention in the record. The trial judge acted within his discretion in granting the directed verdict. This assignment lacks merit.

JURY INSTRUCTIONS
The appellant argues that the trial judge erroneously instructed the jury. The trial court's instruction to the jury was that the jury was to decide the liability of the parties, then determine the damages without regard to the question of liability, and if the person is entitled to recovery, "then those damages will be set according to the percentage you find that one or more of the defendants contributed to those damages."
*1020 The appellant requested an instruction that even the smallest percentage of fault ascribed to any defendant would mean that plaintiffs could choose to execute the entire judgment against that party.
After trial of the case and the presentation of all the evidence and arguments the court shall instruct the jurors on the law applicable to the cause submitted to them. La.C.C.P. art. 1792(B). As stated by this court in Lincecum v. Missouri Pacific Railroad Company, 452 So.2d at 1190:
The adequacy of jury instruction by a trial court must be determined in the light of jury instructions as a whole.... The standard of appellate review is that the mere discovery of an error in the trial judge's instructions does not itself justify the appellate court conducting the equivalent of a trial de novo, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case. (citations omitted)
The trial judge must give all requested instructions which are material and relevant to litigation.... He need not use the exact language submitted by a party but the instructor [sic] must adequately reflect the law and issues presented. Lincecum 452 So.2d at 1191. (Citations omitted.)
The appellant argues that the jury would not have decided the case in the manner it did had it known that, if found liable, AMC could be called upon to pay the entire amount awarded. AMC supports this argument by affidavits from two of the jurors that stated they would not have agreed to find AMC at fault had they known this.
We find that the issue of whether AMC could be called upon to pay the entire award, if found at fault, was not a necessary instruction for the jury's determination of fault or liability of the parties or the damages to be awarded. The additional instruction would suggest to the jury that a consideration for assessing a small percentage of fault is the fact that the party assessed might, in fact, be required to pay the entire amount. This would further necessitate an instruction as to contribution and idenmnification issues totally unrelated to the determination of the fault of the parties or a party's entitlement to damages. This is amply illustrated by the affidavits of the jurors.
After reviewing all of the instructions, we find that the instructions, though somewhat misleading, were not so misleading as to confuse the jury in its determination of liability and damages. Had the judge omitted the statement regarding allocation of damages among the defendants, the jury would have awarded an amount without regard to who may be called upon to pay the damages awarded. This assignment is without merit.

DEPOSIT OF FUNDS BY SENTRY INTO REGISTRY OF THE COURT
Sentry is the liability insurer for Thomas and Debbie Brunet. The single limit of liability was $25,000. Sentry tendered this sum into the registry of the court, with interest, totalling $28,250 "to be held and withdrawn in accordance with law and further orders of this Court." The plaintiffs appeal the judgment of the court which limited Sentry's liability to this sum.
La.C.C. art. 1869 provides:
When the object of the performance is the delivery of a thing or a sum of money and the obligee, without justification, fails to accept the performance tendered by the obligor, the tender, followed by deposit to the order of the court, produces all the effects of a performance from the time the tender was made if declared valid by the court.
A valid tender is an offer to perform according to the nature of the obligation.
A separate act of tender need not precede the deposit. In order for the deposit to qualify as a valid tender it must be unconditional. Pichauffe v. Naquin, 241 So.2d 574 (La.App. 1st Cir.1970). As stated by the Supreme Court in Succession of O'Keefe, 12 La.Ann. 246, 247 (1857):
In order to make a valid tender, the money must be placed in the power of the adverse party. If paid into court, it *1021 must be with the intention on the part of the debtor that the creditor shall be at liberty to take it out of court.
The trial court limited Sentry's liability to the amount deposited. Plaintiffs contend that Canada v. Myers, 511 So.2d 1223 (La.App. 2d Cir.), writ denied, 514 So.2d 1181 (La.1987) demands a different result. We find the present case factually distinguishable from Canada. In Canada the insurer, CLE, deposited money into the registry of the court and the judgment awarded was deducted from the funds deposited. The remainder of the funds was returned to CLE. The court in Canada found that the insurer deposited the funds but attempted to reserve its right to contest liability and by so doing, the insurer had failed to make a valid tender and deposit. In addition, the insurer in Canada sought an order relieving it of interest and costs when the funds were deposited.
The plaintiffs contend that the wording of the order providing that the funds, "be held subject to further orders of this court" mandate that the tender and deposit be held invalid according to Canada. We disagree. The court in Canada specifically held that the "motion and order emphatically do not place the money" in the plaintiff's power. In the present case Sentry admitted liability to the extent of the funds deposited as an unconditional tender with a reservation of rights of the plaintiff to proceed against any party or parties, including Sentry. We find the deposit valid. This assignment is without merit.

SUFFICIENCY OF DAMAGE AWARD
The jury awarded Gerald B. Purvis and Joe F. Slade, Jr. $1250.00 each for loss of consortium, service and society. The plaintiffs argue that these awards are insufficient.
In Reck v. Stevens, 373 So.2d 498, 501 (La.1979) the court stated:
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
After a careful review of the somewhat scanty record on these issues we find no abuse of the trial court's discretion in these awards.
The judgment of the trial court is affirmed. All costs of this appeal are assessed against the appellants.
AFFIRMED.