758 So.2d 900 (2000)
Cheryl HAYES
v.
ALLSTATE INSURANCE COMPANY.
No. 99-1558.
Court of Appeal of Louisiana, Third Circuit.
March 1, 2000.
Rehearing Denied May 3, 2000.
*901 W. Jay Luneau, Alexandria, LA, Counsel for Plaintiff/Appellee-Cheryl Hayes.
Madeline Lee, Bolen & Erwin, Ltd., Alexandria, LA, Counsel for Defendant/Appellant-Allstate Insurance Company.
Court composed of JIMMIE C. PETERS, GLENN B. GREMILLION, ELIZABETH A. PICKETT, Judges.
PETERS, J.
In this suit arising out of an automobile accident, Allstate Insurance Company (Allstate) has appealed the trial court's award of penalties, attorney fees, and storage costs to its insured, Cheryl Hayes, in connection with Allstate's adjusting of Ms. Hayes' claim for property damages. Ms. Hayes has answered the appeal, seeking additional attorney fees in connection with the appeal.

DISCUSSION OF THE RECORD
On June 4, 1997, a 1995 Ford Mustang owned by Ms. Hayes was involved in an accident which resulted in major damage to the vehicle's front end. Ms. Hayes had insured the vehicle through Allstate. Wade Swart, an automobile claims adjuster with Allstate, inspected the vehicle on June 6, 1997. It is undisputed that the damage to the vehicle rendered it a total loss.
According to Ms. Hayes, when she initially spoke with Mr. Swart, he told her that Allstate would take the National Automobile Dealers Association (NADA) value and deduct the amount of her deductible ($500.00). Robert Smith, Ms. Hayes' expert in the field of car sales and valuation, testified that the NADA base value of the vehicle was $12,675.00. According to *902 Mr. Smith's testimony, after add-ons and deductions, the actual cash value of the vehicle was $11,950.00 ($12,675.00, plus $200.00 for alloy wheels, plus $125.00 for anti-lock brakes, minus $600.00 for high mileage, minus $450.00 for a standard transmission).
However, in determining the value of the vehicle, Mr. Swart filled out a form provided by CCC Information Services (CCC), apparently a provider of computerized fair local market values, and gave that information to CCC, which then provided a printed valuation of the vehicle to Mr. Swart. The CCC adjusted cash value of the vehicle was $9,721.38, and Mr. Swart estimated the salvage value to be $2,000.00. In a letter to Ms. Hayes' attorney dated July 2, 1997, Mr. Swart enclosed a check in the amount of $7,325.00, representing what he determined to be the settlement value of the vehicle ($9,825.00), minus the salvage value ($2,000.00), minus the deductible ($500.00). The letter informed Ms. Hayes that Allstate, which had been paying the storage fees on the vehicle, would not be responsible for the payment of any storage fees after July 4, 1997. Mr. Swart testified that he received no counteroffer. However, Ms. Hayes testified that she instructed her attorney to provide Allstate's attorney with the NADA value, and Mr. Swart acknowledged that Allstate's attorney provided him with NADA and mileage tables.
In any event, Ms. Hayes did not agree to accept the amount tendered by Allstate as full payment of her claim. Additionally, she informed Allstate that she did not want the salvage, although she accepted the $7,325.00 as partial payment. However, Allstate refused to pay the salvage value of the vehicle because Ms. Hayes would not agree to sign a proof of loss form. Ms. Hayes' signature on the proof of loss form would have resulted in her acceptance of the settlement and release of Allstate from further responsibility for property damage. According to Mr. Swart, he was not able to transfer the title without the proof of loss. However, Ms. Hayes testified that she agreed to release the title. By letter to Mr. Swart dated September 25, 1997, Ms. Hayes' attorney stated that Ms. Hayes would sign a bill of sale, odometer statement, or other such documents but that she did not intend to sign a document indicating she agreed to the amount paid.
On February 17, 1998, Ms. Hayes filed suit for payment of her property damage claim as well as penalties and attorney fees pursuant to La.R.S. 22:658 and La.R.S. 22:1220. The trial court rendered judgment in favor of Ms. Hayes and ordered Allstate to pay the NADA book value of the vehicle in the amount of $11,661.75,[1] subject to a credit for the $7,325.00 Allstate had already paid to her; penalties of $3,000.00 and attorney fees of $3,000.00 pursuant to La.R.S. 22:658; and storage costs at the rate of $9.00 per day from the date of July 4, 1997 to April 20, 1998, apparently the day the vehicle was moved out of storage. Allstate has appealed the award of penalties, attorney fees, and storage costs. Ms. Hayes has answered the appeal, seeking an increase in attorney fees in connection with the appeal.

OPINION

Penalties and Attorney Fees
Allstate contends that the trial court erred in finding that it was arbitrary and capricious in adjusting the property damage claim and in awarding penalties and attorney fees under La.R.S. 22:658. The trial court based its holding on the failure of Allstate to rely on the NADA book value, which the court determined was the industry standard of the value of Ms. Hayes' vehicle. Allstate contends that while it was within the trial court's discretion *903 to accept the value submitted by Ms. Hayes' expert based on the NADA, a difference of opinion regarding value does not justify an award of penalties and attorney fees.
La.R.S. 22:658 provides in part:
A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
. . . .
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor, as provided in R.S. 22:658 A(1) ... when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater ... together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount.
The purpose of La.R.S. 22:658 is to insure that an insurer which is fully apprised of the facts and circumstances that establish the claimant's right to recovery does not arbitrarily or capriciously deny a claim that is due. Sanders v. International Indem. Co., 97-1061 (La.App. 3 Cir. 2/4/98); 708 So.2d 772, writ denied, 98-0597 (La.4/24/98); 717 So.2d 1173. The statute is penal in nature and must be strictly construed. Id. Additionally, the burden is on the claimant to prove arbitrariness, capriciousness, or a lack of probable cause. Id. Where a reasonable dispute exists regarding the amount of loss, the insurer can avoid the imposition of penalties and attorney fees by unconditionally tendering that part of the claim that is not in dispute. Id. A trial court's conclusion regarding the assessment of statutory penalties is in part a factual determination which should not be disturbed absent manifest error. Id.
In the instant case, Allstate did make a timely tender of $7,325.00. However, the amount of the tender was well below the NADA value and was based on the CCC valuation less $2,000.00 for the salvage value.
Apparently, CCC is a service based in Chicago, Illinois. In making the valuation, CCC compiled the values of five inspected vehicles and thirteen advertised vehicles, using a data base of several cities in Louisiana, including Alexandria, Baton Rouge, Lafayette, New Orleans, and Shreveport. Mr. Swart testified that Allstate uses CCC because it provides a more locale-specific valuation. The only expert who testified at trial, Mr. Smith, was of the opinion that NADA is the standard that is used in the industry and is what dealers rely upon in determining the fair market value of a car. Mr. Smith was not familiar with CCC. Concerning CCC's use of advertised vehicles in its comparison, Mr. Smith testified that, to make a proper determination of the value of the vehicle advertised, it would have to be physically inspected. Additionally, we note that the advertised vehicles do not indicate the size of the engines for purposes of comparison to Ms. Hayes' vehicle. Allstate, which is in the business of adjusting automobile claims, should have realized that such information was not sufficient to provide an accurate comparison.
Moreover, the CCC value assigned to Ms. Hayes' vehicle was not reasonable, which Allstate should also have recognized. Specifically, the CCC valuation was based on an adjusted base valuation of $10,375.00, *904 minus an $800.00 condition adjustment, plus $622.38 for taxes, minus a $500.00 deductible, plus a $24.00 post-tax adjustment, for a total of $9,721.38. Thus, the CCC actual cash value of the vehicle was $9,575.00 ($10,375.00 minus the $800.00 condition adjustment). Curiously, the $800.00 that CCC deducted from the base value for a condition adjustment included a $175.00 deduction for the condition of the engine, which CCC reported as being in good condition with normal wear; a $150.00 deduction for the condition of the transmission, which CCC reported as "average"; a $125 deduction for the tires, which CCC reported as "below average";[2] a $150.00 deduction for the paint, which CCC reported as "average" with only one or two scratches or chips and with a glossy sheen and no blistering; a $125.00 deduction for the body of the car, which CCC reported as "average" with one or two parking dings but no dents or rust; and a $75.00 deduction for the interior of the car, which CCC reported as "average." However, according to Mr. Smith's testimony, it is not normal within the industry to take a deduction for an average engine, transmission, paint finish, body, and interior. Rather, Mr. Smith testified that average wear and tear on a vehicle are considered in the base price and that, if there is no damage, there is no reason to deduct. Additionally, the $10,375.00 adjusted base value included a $707.00 deduction for high mileage and a $500.00 deduction for standard transmission, or a $157.00 greater deduction for these items than the NADA deduction. Also, the adjusted base value did not include an add-on for anti-lock brakes, which the NADA value included, and erroneously included a $250.00 deduction for lack of cassette/radio equipment, which the NADA value did not include. However, both the CCC base value and the NADA base value included a $200.00 add-on for alloy wheels. Importantly, the CCC actual cash value of $9,575.00 is $2,375.00 less than the NADA actual cash value of $11,950.00, or 20% less. It is only where a reasonable dispute exists regarding the amount of loss that an insurer can avoid the imposition of penalties and attorney fees by tendering the amount not in dispute. Id.
Additionally, there was no dispute over the $2,000.00 salvage value, but Allstate refused to tender that amount because Ms. Hayes would not agree to sign a proof of loss form that would have resulted in her release of Allstate from further liability. According to Mr. Swart, he was not able to transfer title without the proof of loss. However, Ms. Hayes had agreed to release the title, sign a bill of sale, and sign an odometer statement. As set forth above, an insurer can avoid penalties and attorney fees by unconditionally tendering that part of the claim that is undisputed. Id. An offer of payment in exchange for a complete release of the claimant's claim is not a tender within the contemplation of La.R.S. 22:658. Johnson v. Protective Cas. Ins. Co., 572 So.2d 355 (La. App. 1 Cir.1990).
While we do not hold that a trial court is always required to use only the NADA value, we note with interest that La.R.S. 32:702(11), located under the Chapter entitled "Vehicle Certificate of Title Law" provides: "The term `total loss' means a motor vehicle which has sustained damages equivalent to seventy-five percent or more of the market value as determined by the most current National Automobile Dealers Association Handbook." In any event, in light of the nature of the comparisons CCC used, the deductions it made for the average condition of the vehicle, Mr. Swart's initial statement to Ms. Hayes that Allstate would use the NADA value, and Allstate's failure to unconditionally tender the undisputed amount of the salvage value, we find no manifest error in the trial court's finding that Allstate was arbitrary, capricious, and without probable cause in failing to timely pay the full amount due per the NADA value. Allstate has not appealed the amount of the penalties and *905 attorney fees, and, therefore, we will not address that issue. For the above reasons, we affirm that award.
Ms. Hayes has answered the appeal, seeking additional attorney fees for work done on appeal. We award her an additional $2,000.00 for that work.

Storage Costs
The trial court awarded storage costs of $9.00 per day from July 4, 1997 to April 20, 1998. Allstate contends that the trial court erred in awarding storage fees after Ms. Hayes had received an unconditional tender. However, as set forth above, Ms. Hayes did not receive an unconditional tender of the salvage value, yet she informed Allstate that she did not want the salvage and apparently did not challenge the amount of Allstate's offer for the salvage. The parties apparently were still in negotiations over the release of the salvage even after July 4, 1997. Under the facts of this case, we find no manifest error in the trial court's decision to award storage costs.

DISPOSITION
For the foregoing reasons, we affirm the judgment in all respects. We assess costs of this appeal to Allstate Insurance Company.
AFFIRMED.
NOTES
[1] As previously stated, Mr. Smith testified that the NADA value was $11,950.00. It is not clear how the trial court derived the $11,661.75 amount, but the manner in which it derived this amount is not at issue on appeal.
[2] This item was not seriously disputed.