653 So.2d 62 (1995)
Jake Ellis MAGEE, Individually and as the Administrator of the Estate of His Minor Son, James Ellis Magee, Mr. and Mrs. Billy J. Smith, Individually and as Survivors of their Minor Daughters, Stacey Smith, and Donna Smith
v.
Mary LANDRIEU, in Her Official Capacity as Treasurer of the State of Louisiana; Raymond J. Laborde, in His Official Capacity as Commissioner of Administration of the State of Louisiana; and Richard P. Ieyoub, Attorney General of the State of Louisiana.
STATE OF LOUISIANA Through the DIVISION OF ADMINISTRATION
v.
Dennis M. PINO, Jr., as Provisional Curator on Behalf of His Daughter, Sharon E. Pino and Mabel Pino, Daniel C. Tanner, as Curator of Betty C. Tanner, Douglas Chauvin and Lillie Chauvin, Laurie J. Jenkins, Individually and as a Natural Tutrix of Her Minor Child, Eddie Ross Jenkins, Joseph B. Harig, and Hazel E. McClin.
Jake Ellis MAGEE, Individually and as the Administrator of the Estate of His Minor Son, James Ellis Magee, et al.
v.
STATE OF LOUISIANA Through the OFFICE OF the TREASURER.
STATE OF LOUISIANA Through the OFFICE OF the TREASURER
v.
Dennis M. PINO, Jr., et al.
Nos. 95 CA 0437, 95 CA 0438 and 95 CW 0474.
Court of Appeal of Louisiana, First Circuit.
March 17, 1995.
Writ Denied April 21, 1995.
*63 Charles William Roberts, Baton Rouge, and Ronnie G. Penton, Bogalusa, for plaintiffs-appellees Jake Ellis Magee, et al.
Robert S. Leake, Clifton O. Bingham, Jr., Thomas F. Wade, Louisiana Dept. of Justice, Baton Rouge, for State of La. through the Office of the Treasurer and the Div. of Admin.
John Naquin, Baton Rouge, for defendants-appellees Dennis M. Pino, Jr., etc.
James Funderburk, Houma, for defendants-appellees Douglas J. Chauvin, Lillie Chauvin.
Bobby Sutton, Jr., Shreveport, for defendant-appellee Joseph Brad Harig.
C.F. Duchein, III, Baton Rouge, for defendant-appellee Hazel E. McClin.
Jerry Dodson, Baton Rouge, for intervenor-appellee Daniel C. Tanner, Curator of Betty C. Tanner.
Patrick C. Morrow, Opelousas, for intervenor-appellee J.W. Deville.
Paul H. Due, Baton Rouge, for Laurie J. Jenkins, amicus curiae.
Before LOTTINGER, C.J., and SHORTESS, CARTER, LeBLANC and FOIL, JJ.
LOTTINGER, Chief Judge.
The State of Louisiana through the office of the Treasurer applied to the Louisiana Supreme Court for a supervisory writ of remedial review in the matters entitled, in the application, Jake Ellis Magee, Individually and as Administrator of the Estate of his minor son, James Ellis Magee, et al. versus State of Louisiana through the Office of the Treasurer, number 410,054 on the docket of the 19th Judicial District Court, and State of Louisiana through the Office of *64 the Treasurer versus Dennis M. Pino, Jr., et al.[1], number 408,800 on the docket of the 19th Judicial District Court, (Number 95 CW 0474 on the Docket of this court) seeking immediate review of the declaratory judgment rendered by the trial court in each proceeding. The Magee case plaintiffs concurred in the application to the supreme court. The supreme court "[g]ranted and transferred to the Court of Appeal for its prompt consideration." Subsequent to the transfer to this court by the supreme court, appeal records in Jake Ellis Magee, etc., et al. versus Mary Landrieu, in her capacity as Treasurer of the State of Louisiana, et at., number 410,054 on the docket of the 19th Judicial District Court, number 95 CA 0437 on the docket of this court, and State of Louisiana through the Division of Administration versus Dennis M. Pino, Jr., etc., et al., number 408,800 on the docket of the 19th Judicial District Court, number 95 CA 0438 on the Docket of this court, were lodged in this court. On March 7, 1995, this court ordered Docket Number 95 CW 0474 fixed for oral argument, and on March 9, 1995, this court further ordered Docket Numbers 95 CA 0437 and 95 CA 0438 fixed for oral argument for the same day as 94 CW 0474.

ISSUES
The issues before this court are the applicability of the holding in Chamberlain v. State, Department of Transportation and Development, 624 So.2d 874 (La.1993) declaring the ceiling in favor of the state on non-economic damages as found in La.R.S. 13:5106(B) unconstitutional and the holding in Rick v. State, Department of Transportation and Development, 93-1776, 93-1784 (La. 1/14/94), 630 So.2d 1271, declaring the pre-judgment interest limitation in favor of the state as found in La.R.S. 13:5112(C) unconstitutional to judgments against the state whether the judgments are final, definitive and executory vis a vis still pending. There is an additional issue of the applicability of La.Civ.Code art. 1866 and the imputation of payments by the state on judgments against it.

FACTS
We glean the following facts from the records on appeal, consisting primarily of pleadings, stipulations and briefs, and the concurring applications for supervisory writs. During the 1994 Regular Session of the Louisiana Legislature approximately 200 House Bills were introduced seeking appropriation of funds for the payment of certain judgments which had become final, definitive and executory subsequent to the last legislative session. Act 15 of 1994 consolidated those bills into one act and appropriated the lump sum of $34,000,000 with the proviso that in the event the sum appropriated was not sufficient to satisfy all judgments, the appropriations for all other general fund state activities would be reduced pro-rata in order to satisfy the judgments.[2] Upon enactment, the Division of Administration commenced performing its statutory duty to calculate *65 the amount due on each judgment and to issue a warrant to the state treasurer to prepare checks to pay the individual judgments.
During the process of calculating the amount due a question arose within the Division of Administration as to the applicability of the Rick decision in the calculation of pre-judgment interest in those cases where the issue of interest had not been raised during the proceeding, had not been addressed in the trial court judgment, or had not been addressed or applied in any appellate review of the judgment. Additionally, in the Magee case, Magee v. Williams, 92-1683, 1993 WL 493278 (La.App. 1 Cir. 10/15/93) (unpublished); writ denied, 93-2834 (La. 1/13/94), 631 So.2d 1165, there arose the issue of the applicability of the Chamberlain decision as to the opinion of this court in Magee.
Because of the dispute the State drafted a restricted receipt and release permitting payment to the judgment creditors of the undisputed amount and reserving to the parties the right to litigate the issue of the correct interpretation and application of the Rick and Chamberlain decisions. The State also agreed to file a declaratory judgment action, naming a representative sample of judgment creditors as defendants, and the parties all agreed mutually to seek immediate review in the supreme court of any trial court ruling.
The State filed a petition for declaratory judgment in the suit captionedState of Louisiana Through the Division of Administration v. Pino, et al., number 408,800 on the docket of the 19th Judicial District Court, and Jake Ellis Magee, a judgment creditor, also filed a petition for declaratory judgment in a suit captioned Magee v. State of Louisiana Through the Office of the Treasurer, et al., number 410,054 on the docket of the 19th Judicial District Court.
The trial court ruled that Rick applied to all judgments which had not been satisfied at the time Rick had been rendered, that Chamberlain applied to the Magee general damage award, and that La.Civ.Code art. 1866 required that all payments made by the State on judgments must be imputed first to legal interest and then to the principal.

ASSIGNMENTS OF ERROR
In seeking a supervisory writ as well as in appealing, the State contends the trial court erred:
1. In ruling that the decision in Rick v. State through the Department of Transportation and Development, 93-1776, 93-1784 (La. 1/14/94), 630 So.2d 1271 applied to all judgments which had not been satisfied at the time that Rick was rendered;
2. When it ruled that the Chamberlain v. State, through the Department of Transportation and Development, 624 So.2d 874 (La.1993) decision applied to the "Magee" general damage award; and
3. When it ruled that La.Civ.Code art. 1866 required that all payments made by the State of Louisiana on the judgments subject herein were to be imputed first to payment of legal interest, and then to reduction of the principal.

APPLICATION OF CHAMBERLAIN AND RICK

RETROACTIVE APPLICATION
We first address the issue regarding retroactive application of Chamberlain and Rick to cases which became final, definitive and executory prior to these decisions.
Generally, when statutes are declared unconstitutional they are void ab initio and all acts done under such statutes are void and of no effect. Smith v. Lincoln Parish Police Jury, 327 So.2d 641, 644 (La. App.2nd Cir.1976) (citing Flournoy v. First Nat. Bank of Shreveport, 197 La. 1067, 3 So.2d 244 (1941)). Furthermore, unless a decision specifies otherwise, it is to be given prospective and retroactive effect. Succession of Clivens, 426 So.2d 585, 594 (La.1982) (on rehearing). However, retroactivity is not constitutionally mandated and states are free to limit the retroactivity of civil decisional law when necessary or advisable. See Clivens, 426 So.2d at 600. (Supreme court gave limited retroactive effect to Succession of Brown, 388 So.2d 1151 (La.1980) which declared unconstitutional La.Civ.Code art. 919.); Lovell v. Lovell, 378 So.2d 418, 422 (La.1979) (supreme court did not give retroactive *66 application to their decision which declared La.Civ.Code art. 160 unconstitutional.)
The three factors to consider when determining whether a decision should be made nonretroactive are:
(1) the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) the merits and demerits must be weighed in each case by looking to the prior history of the rule in question, its purpose and effect and whether retrospective application will further or retard its operation; and (3) the inequity imposed by retroactive application must be weighed.
Clivens, 426 So.2d at 594-95; Lovell, 378 So.2d at 421-22.
For the reasons which follow, we conclude that Chamberlain and Rick should not be applied retroactively to cases which were final, definitive and executory at the time of the supreme court decisions.
Applying the first factor, we determine whether Chamberlain and Rick were decisions of first impression whose resolutions were not clearly foreshadowed. Article XII, Section 10(A) of the 1974 Constitution provides that the state shall not be immune from suit and liability in contract or for injury to person or property. This unambiguous constitutional provision, rejecting sovereign immunity, foreshadowed the conclusions reached by the supreme court in Chamberlain and Rick wherein the court relied on section 10(A) to declare the general damage, La.R.S. 13:5106(B)(1), and interest caps, La. R.S. 13:5112(C), unconstitutional.
Additionally, Segura v. Louisiana Architects Selection Board, 362 So.2d 498 (La. 1978), suggested the results reached in Chamberlain and Rick. In Segura, the supreme court addressed the narrow question of whether the state's exemption from payment of costs granted in Act 135 of 1936, later amended by Act 509 of 1964, was superseded by section 10(A) of the 1974 Constitution. In holding that the state could be liable for costs, the supreme court noted that to conclude otherwise would relieve the State of part of its liability and the constitution makes no such concession. Id. at 499. A close reading of the court's analysis in Segura leads one to the conclusion that the state may not be relieved of any part of the liability imposed in section 10(A). Thus, the Segura decision did slightly foreshadow the supreme court's decisions some fifteen years later in Chamberlain and Rick.
Furthermore, while we agree that Chamberlain did foreshadow the Rick decision, because the cases were decided within three months of each other, we cannot say that this was a "clear" foreshadowing.
In discussing this factor in Clivens, the supreme court noted that Succession of Brown, was clearly foreshadowed by a specific constitutional provision prohibiting arbitrary discrimination against a person because of birth and by cases which utilized that provision to declare other statutes which discriminated against illegitimates unconstitutional. Clivens, 426 So.2d at 595. While there was foreshadowing of the Chamberlain and Rick decisions, we note that the foreshadowing was not as "clear" as it was in Clivens.
Under the second factor, we determine whether a holding of retroactive application will further the rule fashioned in the decisions. We recognize, as the supreme court did in Clivens, that prospective application from the date of the decisions, September 3, 1993, and January 14, 1994, would ignore the constitutional provision which was effective since January 1, 1975. Section 10(A) abolished sovereign immunity and recognized the right of an individual to sue and collect damages from the state. The Chamberlain and Rick decisions promote the meaning of section 10(A) by declaring unconstitutional two statutes which continued to provide some form of sovereign immunity. The purpose and effect of these holdings would be furthered by retroactive application.
As to the third factor, we weigh the inequities which would result from retroactive application of Chamberlain and Rick. Substantial inequity would result if prior final, definitive and executory judgments were declared invalid. Such declaration could require *67 new litigation in each case to redetermine the general damage award. The state would be subject to second suits by parties with whom it had reached an accord and satisfaction. The order to pay increased damages and interest to judgment creditors whose judgments were computed or paid in accordance with then existing law would have a tremendous impact on the public fisc.
Jurisprudence has recognized that where a decision could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the "injustice and hardship" by a holding of nonretroactivity. Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Clivens, 426 So.2d at 594; Lovell, 378 So.2d at 422. We have carefully balanced the three factors and in light of the substantial injustices which would result from a retroactive application, we conclude that Chamberlain and Rick should not be applied retroactively, but prospectively only from the date of the supreme court decisions in each.

APPLICATION TO PENDING LITIGATION
We must address the issue of whether or not the holdings of Chamberlain and Rick can be applied to those cases pending at the time these decisions were rendered, particularly in the instances where the judgment rendered was not final, definitive and executory. The general rule regarding application of new law to pending cases was recently clarified by the Louisiana Supreme Court in Segura v. Frank, 93-1271, 93-1401 (La. 1/14/94), 630 So.2d 714. In Segura, the court stated that:
[A]n appellate court is bound to adjudge a case before it in accordance with the law existing at the time of its decision. See Dripps v. Dripps, 366 So.2d 544 (La.1978), and cases cited therein. Where the law has changed during the pendency of a suit and retroactive application of the new law is permissible, the new law applies on appeal even though it requires reversal of a trial court judgment which was correct under the law in effect at the time it was rendered. See id. at 547-48.
Segura, 630 So.2d at 725.
Under the facts presented in Segura, the retroactive application of the new law was conditioned upon the pendency of the claim. We now consider whether the present claims were "pending" on the dates of these decisions.
In determining what constitutes a "pending claim", we again look to Segura, wherein the court concluded that:
[A] claim is pending as long as it is subject to judicial scrutiny. Even though a lower court has adjudicated a claim and rendered judgment, the claim continues to be pending until appeal of that judgment has been exhausted. Until then, something further remains to fix the plaintiff's right to enforce the claim as well as the defendant's obligation to pay it. In other words, a claim "pending appeal," as that phrase is commonly understood in a legal context, is a pending claim.
Id. at 727.
Based upon the court's reasoning in Segura, we apply the holdings of Chamberlain and Rick to those cases which were still "pending appeal" at the time these judgments were rendered. Further support for this approach can be found at 16 C.J.S. Constitutional Law § 110(b) 1984 which provides:
Furthermore, if such judgment becomes final before the statute is declared unconstitutional, it is valid and binding and cannot be disturbed, unless it is void or voidable for some other reason, at least where the court had jurisdiction of the parties and of the subject matter and had power to render the particular judgment. (footnotes omitted).
With regard to the question of legal interest, we reject the argument that a judgment is "pending" until satisfied by payment in full. In support of this contention, the parties cite Broome v. Gauthier, 443 So.2d 1127, 1139 (La.App.4th Cir.1983) (on denial of rehearing); Lewis v. Macke Building Services, Inc., 524 So.2d 16, 23 (La.App.5th Cir.1988), writ denied, 532 So.2d 131 (La.1988); American Motorist Insurance Company v. American *68 Rent-All, Inc., 617 So.2d 944 (La. App.5th Cir.1993); and Buckbee v. Aweco, Inc., 626 So.2d 1191, 1200 (La.App.3rd Cir. 1993) (on rehearing).
In Broome, plaintiff-appellant applied for rehearing because the appellate court judgment which awarded damages to appellant was silent as to legal interest. The fourth circuit, in its denial of the rehearing request, explained that legal "[i]nterest attaches automatically until the judgment is paid in actions ex delicto whether prayed for in the petition or mentioned in the judgment." The fifth circuit cited Broome when presented with a similar issue in Lewis.
In American, a judgment debtor deposited, ex parte, into the registry of the court, the principal amount owed by it under the judgment along with the interest which it calculated was due. Almost two years later, the judgment creditors withdrew the funds on deposit, and simultaneously, filed a second motion contesting the interest due under the judgment. From a district court judgment awarding additional interest, debtor appealed. The fifth circuit upheld the creditors' right to seek additional interest based upon the trial judge's finding that the deposit was conditional.
The third circuit, in a per curiam opinion on rehearing in Buckbee, addressed the limited issue of whether interest on the judgment should accrue at 7%, the interest rate provided by La.Civ.Code art. 2924 on January 15, 1980, the date of the accident, or whether fluctuating interest rates in effect at the time the lawsuit was filed should apply. The court concluded that "interest on the judgment shall be subject to fluctuating rates of judicial interest for all periods the Buckbees' suit was pending, from the date of judicial demand until paid." (Emphasis supplied).
We find the above-cited cases to be inapposite to the facts presented here. While interest will continue to accrue as to any amounts unpaid under the judgment, the judgment remains final and definitive, both as to principal as well as to the manner in which interest is calculated.
For the foregoing reasons, we hold that the supreme court's holdings in Chamberlain and Rick will be applied to those cases in which a final judgment had not yet been obtained on the dates these decisions were rendered. Stated another way, the holding in Chamberlain is applicable to any and all judgments that were not final, definitive and executory as of the date of rendition of Chamberlain, September 3, 1993. The same is true for the holding in Rick which had a rendition date of January 14, 1994. The issue of whether these holdings were and are applicable to judgments which were pending on those dates, but have now been paid in full and a receipt and release has been executed, is not before us, and we express no opinion thereon.

IMPUTATION OF INTEREST PAYMENTS
The final issue presented for our review is whether the trial judge erred in his determination that La.Civ.Code art. 1866 required that all payments made by the State on the judgments at issue herein be applied first to the interest owed, and thereafter, to the reduction of the principal.
La.Civ.Code art. 1866 provides as follows:
An obligor of a debt that bears interest may not, without the obligee's consent, impute a payment to principal when interest is due.
A payment made on principal and interest must be imputed first to interest.
We find the import of the statute to be clear and unequivocal, and thus, the trial judge's decision was correct.
Therefore, for the above and foregoing reasons, to the extent the judgment of the trial court applied the holding in Rick v. State, Department of Transportation and Development to all judgments that had not been satisfied at the time of the rendition of Rick, it is reversed, and it is now ordered that Rick apply to all cases "pending appeal" as of the date of rendition of Rick, January 14, 1994. It is further ordered that to the extent that the application of the trial court judgment differs with the holding of this opinion it is also reversed, and in all other respects the judgment of the trial court is affirmed. The State of Louisiana is assessed *69 all costs of this proceeding in the amount of $168.10.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
SHORTESS, J., concurs and attaches reasons.
SHORTESS, Judge, concurring.
I agree with the majority opinion and concur only to emphasize that legal interest in a tort case attaches by operation of law to the judgment even without the necessity of asking for it. As such, it becomes a substantive part of the damages award itself. In other words, it is part of the damages award. LSA-R.S. 9:1921. This decision gives legal interest in all pending cases without reservation.
I respectfully concur.
NOTES
[1] In applying for the supervisory writ the State inadvertently changed the caption in the Pino case, docket number 408,800 on the 19th Judicial District Court from State of Louisiana Through the Division of Administration versus Dennis M. Pino, Jr., etc., et al. to State of Louisiana Through the Office of the Treasurer versus Dennis M. Pino, Jr., et al.
[2] Act 15 of 1994 appropriated funds for the ordinary expenses of the executive branch of state government, pensions, public schools, public roads, public charities, and state institutions. Section 18 of Act 15 appropriated the sum of $34,000,000, be it more or less estimated, to be allocated to pay the Board of Tax Appeal judgments and other final judgments against the state, if such judgments were final on or before June 8, 1994. The judgments were delineated in a listing of House Bills contained in Section 18.

Section 18 further provided:
In the event that the amount required to fully fund all of the payments provided for in this Section exceeds $34,000,000, the commissioner of administration is hereby authorized and directed to reduce all state general fund appropriations contained in Section 16 of this Act [appropriations to the executive branch departments and agencies], except those appropriations which are constitutionally or otherwise mandated, in an amount equal to the amount in excess of $34,000,000 required to fully fund such payments. Such reductions shall be based on the proportion which the state general fund appropriation for each budget unit bears to the total state general fund appropriations contained in Section 16.